## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DUE FORNI, LLC,                                    )
                                                   )
     Plaintiff,                             )
                                                   )          Civil Action No. 8:13-cv-3861
v.                                                 )
                                                   )          **COMPLAINT**
EURO RESTAURANT SOLUTIONS, INC., d/b/a             )
"Marra Forni," and FRANCESCO MARRA,                )          **Jury Trial Demanded**
                                                   )
     Defendants.                            )

## COMPLAINT

    Due Forni, LLC ("PLAINTIFF"), brings this action seeking damages and other relief against Euro Restaurant Solutions, Inc., d/b/a "Marra Forni" ("ERS") and Francesco Marra ("MARRA").  PLAINTIFF makes the allegations of this Complaint based upon personal knowledge of matters relating to themselves and upon information and belief as to all other matters.  For its Complaint, PLAINTIFF alleges as follows:

### INTRODUCTION

    1.     This is a complaint for damages for fraud in the inducement, fraud, breach of contract, and conversion arising out of blatant fraudulent actions committed by DEFENDANTS over several years, in connection with the sale of specialized Italian pizza ovens to PLAINTIFF, a Las Vegas-based restaurant business drawing its name, identity, and concept specifically from the nature of its pizza ovens.

    2.     Over a period of two years, DEFENDANTS conceived, perpetrated, and concealed a scheme to defraud PLAINTIFF by purporting to sell it a particular brand of specialized, high-quality Italian-made wood-burning ovens with certain identified specifications while, in fact, delivering to PLAINTIFF substitute, less expensive ovens of a different brand

with different specifications but falsely bearing the name, markings, and trade dress of the ovens PLAINTIFF ordered, paid for, and thought it was receiving.

3.      In addition to depriving PLAINTIFF of the specialized ovens it wanted, DEFENDANTS' conduct resulted in delays, inconveniences, and disruptions to PLAINTIFF's business by virtue of having to operate with ovens other than the ones they had ordered and thought they were dealing with, injuries which DEFENDANTS exacerbated by making further false representations to PLAINTIFF about the origins of the ovens, their actual specifications, and parts being sought from the supposed manufacturer of the ovens, all of which caused PLAINTIFF to suffer damages in the form of lost profits, contribution to fixed overhead, and other compensable injuries to be proven at trial.

4.      When PLAINTIFF discovered the fraud that had been perpetuated upon them, DEFNDANTS did not deny that they had not provided the ovens that PLAINTIFF had asked and paid for but offered no apology, ambiguously deflected blame onto others, and refused to return nearly $26,000 PLAINTIFF had paid as a deposit on two additional yet-to-be-delivered ovens for a new restaurant in Austin, Texas.

5.      PLAINTIFF, therefore, brings this action seeking all available compensatory and punitive damages, the return of its wrongfully procured and retained deposit, and all such other relief as the Court may permit.

**THE PARTIES**

6.      PLAINTIFF is a Nevada limited liability company with its principal place of business located in Las Vegas, Nevada.  It is a small, privately-owned company engaged in a unique restaurant concept whereby all food preparation is done using two specialty ovens.  In reference to this concept, the name of both the company and the restaurants, "Due Forni," means

"two ovens" in Italian.  PLAINTIFF's entire business depends upon this concept and upon the use of pizza ovens with specific capabilities.

7.        DEFENDANT ERS is a distributor/seller of kitchen equipment purportedly sourced overseas, including Italian ovens.  At various times relevant to this Complaint, ERS has operated using the trade name "Marra Forni."  ERS is a Maryland corporation with its principal place of business located in Beltsville, Maryland.

8.        DEFENDANT MARRA is the President, CEO and, on information and belief, owner of ERS.  He is a citizen of the State of Maryland.

**JURISDICTION AND VENUE**

9.        This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

10.        This Court has personal jurisdiction over DEFENDANT MARRA and DEFENDANT ERS because each is a citizen of the State of Maryland and each has the requisite minimum contacts with the State of Maryland.

11.        Venue is proper in this District pursuant to 28 U.S.C. § 1391 because all DEFENDANTS are residents of the State of Maryland.

**FACTUAL ALLEGATIONS**

12.        In or around late September and early October 2010, DEFENDANT ERS, through DEFENDANT MARRA, offered to sell PLAINTIFF a quantity of two 140-centimeter wood-burning, rotator pizza ovens, to be manufactured by an Italian company called Cirigliano Forni ("Cirigliano").

13.        Cirigliano is based just south of Naples, the birthplace of Neapolitan Pizza.

14.      DEFENDANTS specifically encouraged PLAINTIFF to purchase Cirigliano ovens, even though the price was higher, citing the impact on PLAINTIFF's marketing strategy and the uniqueness of its concept combined with the sophisticated nature of the ovens.

15.      The total price provided by DEFENDANTS, including conversion to ovens capable of using gas as the heating fuel, was $58,320.00.

16.      DEFENDANT MARRA claimed to have expertise concerning the oven specifications and capabilities necessary for the preparation of authentic Neapolitan and Roman-style pizza, the mainstay of PLAINTIFF's business model.

17.      DEFENDANT ERS claimed to be the exclusive U.S. dealer for the Cirigliano ovens.

18.      DEFENDANT MARRA (and DEFENDANT ERS, through DEFENDANT MARRA) was fully aware of the following facts pertaining to PLAINTIFF's purchase of ovens:

   a.      MARRA knew precisely the type of restaurant for which the ovens would be used and understood the business model which would rely solely upon those ovens in order to prepare meals for its patrons and, in fact, would take its very name from them.

   b.      MARRA understood that the ovens had to have the capability to heat ingredients during the food preparation process at specific temperatures.

   c.      MARRA was aware that PLAINTIFF sought a very particular, high-quality oven of Italian origin from the area of Naples, Italy.

   d.      MARRA was aware that the Cirigliano ovens were claimed to be particularly-suited, through their refractory brick ovens, built to customer specifications, to the preparation of true Neapolitan pizza.

19.      DEFENDANT MARRA, on behalf of himself and DEFENDANT ERS,
represented that the Cirigliano ovens he offered for sale to PLAINTIFF fully met PLAINTIFF's
requirements and that these ovens were especially suited for the Due Forni restaurant.

20.      In reliance upon DEFENDANTS' representations and claimed expertise,
PLAINTIFF ordered the specified Cirigliano ovens.

21.      On October 6, 2010, DEFENDANT MARRA, on behalf of DEFENDANT ERS,
by U.S. Mail and later by electronic mail, transmitted, from the State of Maryland to the State of
Nevada, Invoice No. 70194 to PLAINTIFF describing the items to be shipped as a quantity of
two "1.40 Wood Burning Pizza Oven Rotator Cirigliano," meaning two Cirigliano Rotator
Ovens with the oven floor being 140 centimeters in diameter.  On information and belief, neither
defendant had any intention of actually supplying the ovens for which they invoiced Plaintiff and
the invoice was transmitted by wire and by U.S. Mail in furtherance of a scheme to defraud
Plaintiff.

22.      On October 20, 2010, PLAINTIFF confirmed the order for two "Cirigliano Capri
140 Rotator ovens" from DEFENDANT ERS, and wired 50 percent of the purchase price,
$29,115.00, to ERS.

23.      In fact, however, neither DEFENDANT MARRA nor DEFENDANT ERS had
any intention of delivering the Cirigliano ovens they had promised PLAINTIFF, but instead
formulated a scheme to substitute a completely different make oven (namely, Morello Forni
ovens) with different specifications (namely, 110-cm oven floors versus the Cirigliano's 140-cm
floors) and which was less expensive and attempt to pass those ovens off as the 140-cm
Cirigliano ovens that had been promised.

24.     In furtherance of their fraudulent scheme and before the ovens were delivered, DEFENDANTS repeated their fraudulent misrepresentations and provided specifications and pictures, by interstate electronic mail, designed to further deceive Plaintiff.

25.     For example, on December 9, 2010, DEFENDANT MARRA sent PLAINTIFF an email message stating "please find the new spec sheet for the Cirigliano oven rotator 140 cm.  As I mentioned to you, the look is still very traditional but trough [sic] the course of the year we have asked Cirigliano [sic] to improve some of the aspects that were imperfect … You will be very satisfied with new [sic] model, people are going [sic] faint when they see it."

26.     The attached document purported to provide information about the Cirigliano ovens PLAINTIFF had ordered, but the specifications were, in fact, for Morello ovens with the Cirigliano name superimposed on the document with image-editing software of some kind.

27.     In addition, on December 22, 2010, DEFENDANT MARRA sent an email, interstate, to PLAINTIFF describing the ordered ovens as "amazing" and purporting to attach photos of the new Cirigliano ovens in the form of ten .jpg files each entitled "CiriglianoRotator" followed by a number (*e.g.*, "CiriglianoRotator13.jpg").  In fact, the ovens in the photographs were not Cirigliano ovens at all, but rather Morello ovens.  They were not 140-cm ovens either; they were 110-cm ovens.

28.     In early January 2011, DEFENDANT ERS delivered to PLAINTIFF in Las Vegas, Nevada what DEFENDANT ERS and DEFENDANT MARRA represented to be two Cirigliano Forni 140-cm ovens.  Both ovens were labeled with the Cirigliano name.  In fact, however, both were Morello Forni 110-cm ovens with the Cirigliano name and trade dress fraudulently affixed.

29.     In reliance upon DEFENDANTS' misrepresentations, PLAINTIFF installed the ovens and proceeded to open its first restaurant in Las Vegas.

30.     Over a period of two years, DEFENDANT MARRA and DEFENDANT ERS continued their fraud by repeatedly representing to PLAINTIFF that they had procured and delivered Cirigliano 140-cm ovens, even as PLAINTIFF encountered numerous difficulties with the performance of the substituted Morello 110-cm ovens.  So as to conceal their prior fraud and to advance their efforts to further defraud PLAINTIFF through additional oven sales, DEFENDANTS continued to advance the charade that the ovens were from Cirigliano, positing alternate explanations for PLAINTIFF's difficulties (including problems with its cooking techniques) and going so far as to manufacture stories about communications with Cirigliano and parts being on back-order.

## The Bottom Temperature Problem

31.     As DEFENDANTS well knew, PLAINTIFF's entire business model depended upon the ability to make true Neapolitan pizza.  In order to make true Neapolitan pizza, specific ingredients are required and the pizza must be baked at 900 degrees Fahrenheit for 60 to 90 seconds in a stone oven.  When cooked, this process should produce a crust that has the following characteristics:

     a.     It is crispy, tender and fragrant.

     b.     It presents with 'leopard" spotting" which is a signature of Neapolitan pizza that imparts both flavor and visual appeal.

32.     The ovens delivered by PLAINTIFF were not suited for this intended purpose as configured.  As a result, for months after the delivery of the ovens PLAINTIFF repeatedly encountered problems with the floor or bottom temperature of the ovens.  Specifically, if they

brought the temperature of the oven above 700 degrees Fahrenheit—which they had to do to achieve the temperature required to make Neapolitan pizza—the pizza crust would be burned on the bottom.  A Cirigliano oven readily should have been able to achieve the required temperature without burning the bottom of the crust.

33.     Because they could not raise the temperature of the oven above 700 degrees Fahrenheit without burning the crust, Plaintiff could not achieve the "leopard" spotting which is the mark of Neapolitan pizza.  Because the cooking times had to be longer, the crust became dry because the water content of the dough would evaporate.  As a result, Plaintiff could not achieve the genuine Neapolitan pizza which was an important part of its business model.

34.     PLAINTIFF reported these problems to DEFENDANTS, but DEFENDANTS varyingly claimed to be seeking guidance from Cirigliano, suggested that the problem was with the pizza dough and the cooking methods that PLAINTIFF was using, and stated that "nobody really cooks at 900 degrees anyway."

35.     In fact, the *actual* manufacturer of the ovens DEFENDANTS had provided— Morello Forni—and its U.S. distributer, Rosito Bisani, knew what the issue was.  It had to do with the composition of the oven floor and its heat retention properties, something that easily could have been adjusted had DEFENDANT MARRA and DEFENDANT ERS been honest regarding the manufacturer and source of the ovens.  Because they were not, PLAINTIFF devoted considerable time and effort to things unrelated to the actual problem in an effort to identify and fix a problem that could have been identified and fixed immediately if all the facts were disclosed.

**The Electrical Problem**

36.       The rotator ovens were designed to enable motorized rotation of the oven floors, allowing the chefs to access the entire oven floor easily, resulting in faster preparation of meals and greater productivity.  This function was enabled by an electrical system on the ovens.

37.       From the beginning, PLAINTIFF encountered problems with the performance of the electrical systems which seriously impacted its new restaurant business.  PLAINTIFF advised DEFENDANTS of these problems and four times within the first five months DEFENDANTS sent technicians to work on the electrical assembly.

38.       PLAINIFF advised DEFENDANTS that these repeated electrical problems were hampering its operation and asked at what point the manufacturer (to PLAINTIFF's knowledge, Cirigliano) would simply replace the entire electrical assembly.

39.       DEFENDANT MARRA and DEFENDANT ERS claimed to be seeking assistance and parts from the manufacturer, Cirigliano, when the fact was that Cirigliano had not manufactured the ovens at all—Morello Forni had.

40.       On September 12, 2012, PLAINTIFF's Executive Chef Partner, Carlos Buscaglia, pleaded with DEFENDANT MARRA by email, "What is the status on the parts for the oven?"

41.       The following month, he emailed again, "I still don't have the oven parts, it's been 6 months now.  I need the parts ASAP."

42.       PLAINTIFF's CEO, Alex Taylor, chimed in, "We need a written commitment from you by 4PM EDT on EXACTLY what you plan to do and the timeline.  We've been assured and apologized to enough.  We want a written commitment and timeline."

43.       DEFENDANT MARRA responded by claiming that he was working with Cirigliano, a blatant lie, and that the parts were on "back order."  Still, DEFENDANT MARRA

9

did not reveal the true source of the ovens so that PLAINTIFF could order the parts from the actual manufacturer.

44.     Had PLAINTIFF known the true origin of their ovens, they would have been able to obtain parts and technical assistance from the actual manufacturer's sole distributer in the United States, Rosito Bisani, located in Los Angeles, California.  Instead, PLAINTIFF spent months going back and forth with DEFENDANT MARRA in an attempt to resolve the problem through DEFENDANTS, whom they had been led to believe were the exclusive U.S. dealer for the Cirigliano ovens PLAINTIFF had been falsely told it had purchased, seriously hampering restaurant operations in the meantime.

## The New Oven Purchase

45.     In late 2012, PLAINTIFF was preparing to open a new restaurant in Austin, Texas, using the same two-oven concept being employed in the Las Vegas restaurant.  At this point, not knowing about the fraud being perpetrated on them by DEFENDANT MARRA and DEFENDANT ERS, PLAINTIFF negotiated with DEFENDANT MARRA to purchase additional ovens for the new restaurant.

46.     On December 14, 2012, PLAINTIFF sent a wire transfer providing a deposit of $25,900, representing 50% of the purchase price on two new ovens for the Austin, Texas restaurant.

## The Pizza Expo

47.     On March 19, 2013 vendors, restaurant owners, and others involved in the pizza industry gathered in Las Vegas for the 29th Annual International Pizza Expo ("Expo").  Mr. Taylor and Mr. Buscaglia attended the Expo.  DEFENDANT MARRA attended as well.

48.     At the Expo, Mr. Taylor and Mr. Buscaglia visited the exhibit established by Rosito Bisani, the U.S. distributor for Morello Forni ovens.  When they saw the Morello ovens

displayed there, they immediately recognized them as the ovens which had been sold to them and falsely represented to be Cirigliano ovens.

49.     Mr. Taylor and Mr. Buscaglia confronted DEFENDANT MARRA at the Expo who claimed that the Cirigliano "people in Italy" had misinformed him and he promised to look into it.  MARRA later admitted to the deceit, admitting that he had lied because he could not source the ovens to meet Plaintiff's needs, but wanted to retain the sale.

**<u>Due Forni Cancels the New Oven Order</u>**

50.     After some attempts to resolve their concerns with DEFENDANT MARRA, on April 13, 2013, PLAINTIFF canceled the order for the two new ovens and demanded the return of its $25,900 deposit.

51.     To date DEFENDANTS have refused to return the deposit.

52.     DEFENDANTS engaged in the foregoing conduct with actual knowledge of the falsity of their statements and representations, coupled with an intent to deceive PLAINTIFF.

53.     DEFENDANTS engaged in all of the foregoing conduct with consciousness of the wrongful nature of their conduct.

54.     DEFENDANTS' acts were characterized by evil motive, intent to injure, ill will, or fraud.

**FIRST CAUSE OF ACTION**
**(Fraud in the Inducement)**
**(Against All Defendants)**

55.     PLAINTIFF re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

56.     In or about September and October 2010, DEFENDANTS induced PLAINTIFF to order from them specialty Italian pizza ovens by falsely offering and quoting prices for ovens while misrepresenting their origin, manufacturer, and specifications, namely:

       a.     That the ovens were manufactured by Cirigliano; and

       b.     That the oven floors were 140 centimeters in diameter.

57.     DEFENDANTS further induced PLAINTIFF to order additional Cirigliano 140-cm ovens in or about December 2012 by repeating the same misrepresentations along with additional representations which served to prolong the charade that DEFENDANTS had provided and would in the future provide Cirigliano 140-cm ovens, including:

       a.     That they were communicating with Cirigliano about the electrical problems PLAINTIFF was encountering;

       b.     That they had ordered parts from Cirigliano; and

       c.     That the parts from Cirigliano were on "back order".

58.     DEFENDANTS knew that the representations in the foregoing paragraph were false when they made them.

59.     At the time they made their representations to PLAINTIFF, DEFENDANTS did not intend to provide PLAINTIFF with Cirigliano 140-cm ovens.

60.     The representations DEFENDANTS made, as described above, they made for the purpose of deceiving and defrauding PLAINTIFF.

61.     PLAINTIFF rightfully relied upon the foregoing representations when DEFENDANTS made them.

62.     As a result of their reliance upon those representations, PLAINTIFF suffered compensable injuries, including the money paid under the false pretenses of DEFENDANTS,

lost profits, and contribution to fixed overhead, and other compensable injuries to be proved at trial.

63.     DEFENDANTS made the foregoing statements and representations with actual knowledge of their falsity, coupled with an intent to deceive PLAINTIFF, therefore, PLAINTIFF is entitled to punitive damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(Fraud)**
**(Against All Defendants)**

64.     PLAINTIFF re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

65.     DEFENDANTS, on repeated occasions, made false representations to PLAINTIFF regarding the origin, manufacturer, and specifications of the ovens they sold and delivered to PLAINTIFF in January of 2011, namely:

    a.     That the ovens were manufactured by Cirigliano;

    b.     That the oven floors were 140 centimeters in diameter;

    c.     That they were communicating with Cirigliano about the electrical problems PLAINTIFF was encountering;

    d.     That they had ordered parts from Cirigliano; and

    e.     That the parts from Cirigliano were on "back order".

66.     DEFENDANTS knew that the representations in the foregoing paragraph were false when they made them.

67.     The representations DEFENDANTS made, as described above, they made for the purpose of deceiving and defrauding PLAINTIFF.

68.     PLAINTIFF rightfully relied upon the foregoing representations when DEFENDANTS made them.

69.     As a result of their reliance upon those representations, PLAINTIFF suffered compensable injuries, including the money paid under the false pretenses of DEFENDANTS, lost profits, and contribution to fixed overhead, and other compensable injuries to be proved at trial.

70.     DEFENDANTS made the foregoing statements and representations with actual knowledge of their falsity, coupled with an intent to deceive PLAINTIFF, therefore, PLAINTIFF is entitled to punitive damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (Breach of Contract)
### (Against ERS)

71.     PLAINTIFF re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

72.     PLAINTIFF contracted with DEFENDANT ERS to purchase two Cirigliano Forni 140-cm floor, wood-burning, rotating pizza ovens for the price of $58,320.00.

73.     DEFENDANT ERS failed to deliver the purchased ovens and instead substituted two Morello Forni 110-cm floor ovens, presented and marked as if they were Cirigliano Forni ovens.

74.     As a result of DEFENDANT ERS' breach of the contract, PLAINTIFF was denied the benefit of the bargain and suffered reasonably foreseeable damages including lost profits, contribution to fixed overhead, and other compensable injuries to be proved at trial.

75.     PLAINTIFF further contracted with DEFENDANT ERS to purchase two additional Cirigliano Forni 140-cm floor, wood-burning, rotating pizza ovens for the price of $51,800 and paid a deposit of $25,900.

76.     When PLAINTIFF discovered DEFENDANT ERS' prior breach on the first order and its fraudulent conduct, PLAINTIFF cancelled the order and demanded the refund of its deposit.

77.     DEFENDANT ERS has refused to return the deposit, causing PLAINTIFF to suffer damages in the form of the lost funds and the ability to use them.

**FOURTH CAUSE OF ACTION**
**(Conversion)**
**(Against All Defendants)**

78.     PLAINTIFF re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

79.     DEFENDANTS acquired from PLAINTIFF a deposit in the amount of $25,900 towards the purported purchase of two Cirigliano Forni 140-cm floor, wood-burning, rotating pizza ovens and have exercised dominion over PLAINTIFF's property in defiance of PLAINTIFF's rights and have retained it longer than PLAINTIFF has permitted.

80.     DEFENDANTS intended to exercise a dominion or control over PLAINTIFF's property that was, in fact, inconsistent with PLAINTIFF's rights.

81.     DEFENDANTS engaged in all of the foregoing conduct with consciousness of the wrongful nature of their conduct.

82.     DEFENDANTS' acts were characterized by evil motive, intent to injure, ill will, or fraud.

83.        PLAINTIFF, therefore, is entitled to an award of punitive damages in an amount to be determined at trial.

## JURY TRIAL DEMAND

PLAINTIFF hereby demands a jury trial on all claims and issues so triable.

## RELIEF REQUESTED

WHEREFORE, PLAINTIFF requests that the Court:

1.        Enter judgment in favor of PLAINTIFF and against DEFENDANTS;

2.        Order that DEFENDANTS cease their unlawful activities immediately and return the money paid under false pretenses;

3.        Award PLAINTIFF compensatory and consequential damages;

4.        Award PLAINTIFF all punitive and exemplary damages available at law;

5.        Award PLAINTIFF prejudgment interest as permitted by law;

6.        Award PLAINTIFF reasonable attorney's fees to the extent and in the amount permitted by law; and

7.        Award such other relief as the Court may deem just and proper.

Dated:  December 23, 2013

Respectfully Submitted,

*s/Daniel Marino*
Daniel Marino (D. Md. Bar No. 23657)
Tillman Finley (D. Md. Bar No. 16719)
MARINO LAW PLLC
910 17th Street, NW Suite 800
Washington, DC  20006
Tel: (202) 223-8888
Fax: (202) 223-8677
dmarino@marinolawpllc.com
tfinley@marinolawpllc.com