**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| DUE FORNI LLC, | * |
| **Plaintiff,** | * |
| **v.** | * |
| | Civil Case No.: PWG-13-3861 |
| **EURO RESTAURANT** | * |
| **SOLUTIONS, INC.,** | |
| **d/b/a Marra Forni,** *et al.*, | * |
| | * |
| **Defendant** | * |

*    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM OPINION**

Plaintiff Due Forni designed its Las Vegas pizza restaurant around the concept of making

authentic Neapolitan pizza[1] in two ovens (in Italian, "due forni").  To that end, Due Forni entered

into an agreement with and purchased pizza ovens for its restaurant from Defendants Euro

Restaurant Solutions, Inc., d/b/a Marra Forni ("ERS"), and Francesco Marra, believing that an

Italian company named Cirigliano Forni manufactured them.  The ovens did not perform as they

expected—there were electrical problems and the ovens did not reach the high temperature

necessary to make Neapolitan pizza correctly—and Due Forni learned that a different Italian

company, Morello Forni, actually had manufactured them, even though they were sold under the

name Cirigliano Forni.  Due Forni filed suit against Defendants, claiming fraud, fraud in the

---

[1] Genuine Neapolitan pizza must be made with dough from wheat flour, natural Neapolitan yeast, salt, and water.  The dough then must be hand-kneaded, shaped by hand to be no more than four millimeters thick, and, most importantly for this case, baked for 60–90 seconds in a 905°F stone oven, using an oak-wood fire.  *See* Associazione Verace Pizza Napoletana, Regulations for obtaining use of the collective trade mark "Verace Pizza Napoletana" – (Vera Pizza Napoletana), http://www.pizzanapoletana.org/public/pdf/disciplinare%202008%20UK.pdf.

inducement, breach of contract, conversion, and unjust enrichment. Am. Compl., ECF No. 10.  I granted Defendants' motion to dismiss as to the breach of contract and conversion claims, and I observed that "when an express contract is present, as is the case here, a plaintiff cannot recover under the quasi-contractual theory of unjust enrichment."  June 25, 2014 Mem. Op. & Order 10, ECF No. 16.  Due Forni does not dispute that its unjust enrichment claim is subject to dismissal. *See* Defs.' Mem. 11, ECF No. 37-1 (arguing that "Plaintiff cannot assert unjust enrichment because, as this Court recognized, this matter is governed by a contract."); Pl.'s Opp'n 1 ("This is a straight-forward case of fraud.").

Currently pending is Defendants' motion for summary judgment on Due Forni's remaining claims.   ECF No. 37.[2]   Because Due Forni has submitted sufficient evidence to proceed to trial on its claims for fraud and fraud in the inducement, I will deny Defendants' motion as to these claims.   However, I will dismiss the unjust enrichment claim because an express contract is present. Additionally, because Plaintiff has identified facts directly implicating Marra's liability for fraud, I will deny Defendants' request to dismiss the matter as to Marra in his individual capacity.

## **Standard of Review**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).   If the party seeking summary judgment

---

[2] The parties fully briefed the motion.  ECF Nos. 37-1, 41, 47.  A hearing is not necessary.  *See* Loc. R. 105.6.

demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317, 325 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* "[U]nder Fed. R. Civ. P. 56, as amended in 2010, facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the requirement is that the party identify facts that *could be* put in admissible form." *Mallik v. Sebelius*, 964 F. Supp. 2d 531, 546 (D. Md. Aug. 28, 2013) (citing *Niagara Transformer Corp. v. Baldwin Techs., Inc.*, No. DKC-11-3415, 2013 WL 2919705, at *1 n.1 (D. Md. June 12, 2013)).

## <u>Discussion</u>

### Fraud

Due Forni claims both fraud and fraud in the inducement. To establish fraud, Maryland law[3] requires a plaintiff to prove that:

> (1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

*Hoffman v. Stamper*, 867 A.2d 276, 292 (Md. 2005) (citing *Nails v. S & R, Inc.*, 639 A.2d 660, 668 (Md. 1994)).

---

[3] The contract for sale of the ovens states that Maryland law applies. *See* Contract ¶ 10, Defs.' Mot. to Dismiss Ex. 1, ECF No. 6-2.

"[F]raud in the inducement is a subspecies of fraud" in which the defendant allegedly employs fraud to induce the plaintiff to enter into a contract. *Sass v. Andrew*, 832 A.2d 247, 431 (Md. Ct. Spec. App. 2003)).  In Maryland, "[t]he tort of fraudulent inducement 'means that one has been led by another's guile, surreptitiousness or other form of deceit to enter into an agreement to his detriment.'" *Rozen v. Greenberg*, 886 A.2d 924, 929 (Md. Ct. Spec. App. 2005) (quoting *Sec. Constr. Co. v. Marietta*, 334 A.2d 133, 136 (Md. Ct. Spec. App. 1975)).  To establish fraud in the inducement, a plaintiff must show that the defendant "enter[ed] an agreement to do something, without the present intention of performing," that is, that the defendant "'induce[d] [the plaintiff] to part with his money or property by means of a promise which he makes with the intention of not performing it.'"  *First Union Nat'l Bank v. Steele Software Sys. Corp.*, 838 A.2d 404, 426 (Md. Ct. Spec. App. 2003) (quoting *Appel v. Hupfield*, 84 A.2d 94 (Md. 1951)); *see Dierker v. Eagle Nat'l Bank*, 888 F. Supp. 2d 645, 652 (D. Md. 2012) (quoting *First Union*).  Thus, the elements are the same, with the addition that fraud in the inducement causes the plaintiff to enter into a contract.  *Compare Hoffman*, 867 A.2d at 292, *with First Union*, 838 A.2d at 426.

Here, Due Forni submitted evidence in the form of an affidavit from Alex Taylor, its Chief Executive Officer, that Defendants "made a false representation to the plaintiff." *See Hoffman*, 867 A.2d at 292.  Taylor stated that Marra specifically encouraged him to purchase custom built Cirigliano rotator gas ovens, of which ERS was the exclusive U.S. distributor, and that "the extremely high quality and prestige associated with the Cirigliano name was worth the investment." Taylor Aff. ¶¶ 5, 14, Pl.'s Opp'n Ex. 1, ECF No. 41-1. Taylor stated that on October 1, 2010, Marra emailed a request for a down payment of 50% in order to pay Cirigliano in advance, and that shortly thereafter, on October 13, 2010, Taylor received an email "invoice

for the two 'Rotator Cirigliano Brick Oven[s]' and wiring instructions for the $29,115 deposit." *Id.* ¶¶ 17-19.   Taylor added that in November and December of that same year, he had numerous conversations with Marra regarding the production of the ovens and that at no time was he informed that Cirigliano was not manufacturing the ovens. *Id.* ¶ 20.   After receiving photos and descriptions of the ovens, labeled as Cirigliano, Taylor wired Defendants a 50% deposit.   *Id.* ¶¶ 24-26.   Lastly, Taylor asserted that in January of 2011, the ovens were delivered to Due Forni in Las Vegas labeled with the Cirigliano brand name.   *Id.* ¶ 28.   These representations were false because, as Defendants concede, the ovens were not Cirigliano ovens. F. Marra Aff. ¶¶ 1–4, Def.'s Reply Ex. 1, ECF No. 47-1.

Due Forni also submitted evidence that Defendants knew that the representation that Cirigliano was the manufacturer was false.   *See Hoffman*, 867 A.2d at 292. Defendants do not dispute that they were aware the ovens were manufactured by Morello Forni and marketed under ERS's Cirigliano label. Marra Aff. ¶¶ 1-4.   In fact, according to Defendants, in "late October," Cirigliano notified ERS that problems in the manufacturing process required the suspending of shipments of rotator ovens.   Defs.' Mem. 2.   Thus, taking the evidence in the light most favorable to Plaintiff as the non-movant, Defendants knew the ovens were not manufactured by Cirigliano prior to completing the transaction with Due Forni.   Even if this were not the case, Defendants' failure to inform Due Forni of the change of supplier, despite continuous references to "Cirigliano" during the contract negotiation, exhibits a reckless disregard for the true origin of the ovens.

Additionally, Due Forni submitted evidence that Defendants made that representation to defraud Plaintiff.   *See Hoffman*, 867 A.2d at 292.   Plaintiff presents an affidavit from Marco Morello, co-owner of Morello Forni, in which he stated that representatives of ERS purchased

four ovens directly from the factory in Italy and requested that the ovens not display the Morello Forni brand name.  Morello Aff. ¶ 3, Pl.'s Opp'n Ex. 3, ECF No. 41-3.  He added that Morello did not give, and ERS did not request, permission to affix the name or branding of Cirigliano Forni on the ovens or to otherwise sell or distribute the ovens with or under the Cirigliano label. *Id.* ¶¶ 4-5.  And, according to Taylor, Due Forni did not discover the true source of the ovens until two years later when he recognized similar ovens being displayed at a Morello Forni exhibit in the March 2013 International Pizza Expo in Las Vegas.  Taylor Aff. ¶¶ 54-59.  Taylor asserts that, at the time that this discovery was made, Marra admitted to deceiving Plaintiff in an attempt to retain the sale.  *Id.* ¶ 58.  Additionally, "the serial numbers on the inside of the electrical panel on the ovens had been scratched off," from which a fact finder reasonably could infer an attempt to conceal the actual brand of the ovens.  *See id.* ¶ 67.

Also, Due Forni submitted evidence that it reasonably relied on the misrepresentation. *See Hoffman*, 867 A.2d at 292. Plaintiff has shown that Defendants continually referred to the ovens as "Cirigliano" in all correspondence, Taylor Aff. ¶¶ 24, 27, 40-44, 50, and that there was nothing on the ovens or in the correspondence between the parties that indicated they were Morello ovens, *id.* ¶¶ 28, 40-44.  Plaintiff also demonstrates that, during the two year period when the ovens exhibited poor performance and suffered from various mechanical problems, it approached Defendants as to possible solutions, or the need for replacement parts under the belief that Cirigliano manufactured the ovens, *id.* ¶¶ 29-45, 79, and that "[a]t no point during any of this period did Mr. Marra or ERS ever disclose to [Taylor] that [the] ovens had not been manufactured by Cirigliano, that parts for them could not be obtained from Cirigliano, or that any other manufacturer or vendor should or could be consulted to address the issues we were experiencing."  *Id.* ¶ 44.  Clearly, Plaintiff relied on the representation that the ovens were

Cirigliano ovens, and it was reasonable for them to do so, given Defendants' continual representations to that effect.

Although Due Forni can survive Defendants' summary judgment motion with respect to the first four elements of fraud, it also must offer evidence that it "suffered compensable injury as a result of the misrepresentation." *See Hoffman*, 867 A.2d at 292.

> Under Maryland law, "[i]t is the general rule that one may recover only those damages that are affirmatively proved with reasonable certainty to have resulted as the natural, proximate and direct effect of the injury." *Empire Realty Co. v. Fleisher,* 269 Md. 278, 305 A.2d 144, 147 (1973). In determining the "proper measure of damages in fraud and deceit cases," Maryland applies the "flexibility theory," under which a victim of fraudulent misrepresentation may elect to recover either out-of-pocket expenses or benefit-of-the-bargain damages. *Hinkle v. Rockville Motor Co.,* 262 Md. 502, 278 A.2d 42, 47 (1971).

*SG Homes Assocs., LP v. Marinucci*, 718 F.3d 327, 336 (4th Cir. 2013).  The out-of-pocket test "permits a plaintiff to recover his or her actual losses."  *Id.*  Actual losses are "'the difference between the amount of the purchase price the buyer has paid and the actual value of the property on the date it was sold.'"  *Hall v. Lovell Regency Homes Ltd. P'ship*, 708 A.2d 344, 349 (Md. Ct. Spec. App. 1998) (quoting *Beardmore v. T.D. Burgess Co.*, 226 A.2d 329 (Md. 1967)).  This is the "preferred test."  *Id.*

The benefit-of-the-bargain test "puts the plaintiff in the same financial position as if the fraudulent representation had in fact been true." *SG Homes*, 718 F.3d at 337 (citing *Goldstein v. Miles,* 859 A.2d 313, 324 (Md. Ct. Spec. App. 2004).  Under this test, the court "award[s] as damages 'the difference between the actual value of the property at the time of making the contract and the value that it would have possessed if the representations had been true." *Goldstein*, 859 A.2d at 324 (quoting *Hall*, 708 A.2d 344).  Alternatively, benefit of the bargain damages can be calculated based on the "cost to conform," that is, the expense required "to put the [property] in [the same] condition as it was represented." *Hinkle*, 278 A.2d at 47.  If the

property "can be replaced," however, the defendant "should have the opportunity to show if possible that it could replace [the property] with a new one [that is] the same . . . as originally represented at a lesser cost than the [amount] required for repair of the one in question." *Id.*

Notably, "the benefit-of-the-bargain rule is not so elastic that every victim of a false representation is entitled to receive the benefit of what he or she was promised." *Id.* The court may award benefit-of-the-bargain damages only "'in appropriate cases.'" *Buie v. Sys. Automation Corp.,* 918 F.2d 955 (table), 1990 WL 180126, at *11 (4th Cir.1990) (quoting *Call Carl, Inc. v. B.P. Oil Corp.*, 554 F.2d 623, 629 (4th Cir. 1977)). Specifically, "if the fraudulent representation also amounted to a warranty, recovery may be had for loss of the bargain because a fraud accompanied by a broken promise should cost the wrongdoer as much as the latter alone." *Hinkle*, 278 A.2d at 47 (citation and quotation marks omitted). But, "damages under the benefit-of-the-bargain rule [must be] proved with sufficient certainty"; if "the circumstances disclosed by the proof are so vague as to cast virtually no light upon the value of the property had it conformed to the representations, the court will award damages equal only to the loss sustained." *Id.* (citation and quotation marks omitted).

Due Forni contends that "Defendants' representations were in the nature of a warranty, making specific promises about the type, source, size, specifications, and certifications of the ovens to be delivered." Pl.'s Opp'n 23. By failing to challenge this assertion, Defendants implicitly concede that it is true. Plaintiff offers specific evidence of the costs it incurred to make the Morello ovens operate as the Cirigliano oven was supposed to. Taylor stated that Due Forni has "sustained approximately $10,000 in out-of-pocket[4] costs and lost employee time addressing the continual issues with the ovens' performance." Taylor Aff. ¶ 74. Specifically,

---

4 Although Taylor uses the term "out-of-pocket," these costs do not refer to out-of-pocket damages, or actual losses, but rather to the cost to conform.

Due Forni had to hire Morello's U.S. distributor to replace the oven floors with "[n]ew floors created by Morello, using the mold that Morello controlled" and to "trouble-shoot the constant problems with the electrical functions of the ovens." *Id.* ¶¶ 66–72. Technicians from other vendors also "made numerous visits to [the] Las Vegas location" to address the electrical problems. *Id.* ¶ 72. Due Forni also spent $4,400 reconfiguring its kitchen. *Id.* ¶ 23. Thus, regardless whether Plaintiff presented sufficient evidence of lost profits, Plaintiff has presented sufficient evidence of its cost to conform, one manner of proving benefit of the bargain damages, to survive Defendants' summary judgment motion. *See Hinkle*, 278 A.2d at 47.

Consequently, a genuine dispute of material fact exists regarding each element of fraud. And, Plaintiff also shows that this fraud led them to enter into contracts to purchase the ovens from ERS, as well as engage ERS in a subsequent purchase of ovens two years later. Taylor Aff. ¶¶ 24-27, 53. Because there is a genuine dispute of material facts as to all elements, summary judgment is not appropriate on either fraud count. Defendants' Motion for Summary Judgment as to fraud and fraud in the inducement IS DENIED.

### Personal Liability of Francisco Marra

Defendants move to dismiss the claims against Francisco Marra in his individual capacity under the belief that "Plaintiff cannot meet its heavy burden, by clear and convincing evidence, to show that Marra acted 'fraudulently' or somehow fraudulently induced Plaintiff to enter into the Contract." Defs.' Mem. 14–15. Not so. Under Maryland law, a plaintiff seeking to hold an owner or officer of a corporation liable may do so under a corporate veil piercing theory or under a participation theory. *Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675, 681 (D. Md. 2012). "Under the corporate veil theory, the individual is liable because the corporation is not a bona fide independent entity: the acts are therefore truly the individuals. In

contrast, under the participation theory, liability attaches 'where the record establishes the individual's participation in the tortious activity.'" *Id.* (citations omitted).  Maryland courts are reluctant to pierce the corporate veil, and "the protection afforded to a corporate entity will only be disregarded when it is 'necessary to prevent fraud or to enforce a paramount equity.'" *Antonio v. Sec. Svcs. of Am., LLC*, 701 F. Supp. 2d 749, 759 (D. Md. 2010) (quoting *Dixon v. Process Corp.*, 382 A.2d 893, 899 (Md. Ct. Spec. App. 1978)).  Here Due Forni does not seek to pierce the corporate veil.  Instead, it roots its liability claim in Marra's personal actions.  *See* Pl.'s Opp'n 34. Therefore I need only address Marra's liability under the participation theory.

In Maryland, "[e]xcept as otherwise provided by this title, no member shall be personally liable for the obligations of the limited liability company, whether arising in contract, tort or otherwise, solely by reason of being a member of the limited liability company."  Md. Code Ann., Corps. & Ass'ns § 4A-301.  However, an individual may be "personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body." *See Metromedia Co. v. WCBM Md., Inc.*, 610 A.2d 791, 794 (Md. 1992) (quoting *Tedrow v. Deskin*, 290 A.2d 799, 802–03 (Md. 1972)).  It is not enough that the individual is present when the tort occurs. Rather, for liability to attach, the individual must participate in the tort either by directing that the particular act be committed, or participating or cooperating in it.  *Id*.

Here, Marra dealt directly with Due Forni CEO Alex Taylor during the period when Taylor contracted to purchase the two ovens.  Despite knowing the true source of the ovens, Marra sent multiple emails to Taylor detailing the qualities of the Cirigliano ovens, Taylor Aff. ¶¶ 21-27, 53, and personally signed the receipt of the manual that accompanied a copy of the bill of lading. *Id*. ¶ 27. Marra admits that ERS representatives meet with Morello Forni

representatives when ERS sought to purchase substitute ovens.  F. Marra Aff. ¶¶ 2-4.  After these ovens were delivered and installed in Plaintiff's restaurant, Marra was in contact with Taylor during the attempted resolution of the electrical and mechanical issues, and continually referred to the ovens as being manufactured by Cirigliano. Taylor Aff. ¶¶ 31, 42-45. Lastly, Marra was present at the March 2013 International Pizza Expo in Las Vegas at which time Taylor allegedly discovered the ovens' true origin.  At this point in time, according to Taylor, Marra admitted to lying about the true origin of the ovens in order to retain the sale. *Id*. ¶ 58.

Due Forni has produced more than sufficient factual support to show there is a genuine dispute of material facts as to whether Francesco Marra personally committed, inspired, or participated in both the fraud and fraudulent inducement.  Due Forni's claim against Defendant Francisco Marra may proceed, and Defendant's request for summary judgment as to Francisco Marra in his individual capacity IS DENIED.

### Punitive Damages

Defendants seek to preclude the recovery of punitive damages on the basis that a prior agreement existed between the parties prohibiting punitive damages and, even were this not the case, Plaintiff is unable to show the elements necessary to pursue recovery.

Maryland law regarding contract interpretation is well-settled.  "[T]he cardinal rule of contract interpretation is to give effect to the parties' intentions." *Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 232 (Md. 2013) (quoting *Tomran, Inc. v. Passano*, 891 A.2d 336, 344 (Md. 2006) (citing *Owens–Illinois, Inc. v. Cook*, 872 A.2d 969, 985 (Md. 2005))). When construing an unambiguous contract, "courts focus on the four corners of the agreement[,] and ascribe to the contract's language its customary, ordinary, and accepted meaning."

*Dynacorp Ltd. v. Aramtel Ltd.*, 56 A.3d 631, 670 (Md. Ct. Spec. App. 2012) (citations and quotation marks omitted).

In my June 25, 2014 Memorandum Opinion and Order, I held that the ERS/Marra Forni Terms and Conditions of Sale ("the Contract") governed the sale of the ovens. June 25, 2014 Mem. Op. & Order 6, ECF No. 16.  There, I noted that Plaintiff did not dispute the language of the Contract.  *Id.* at 7.  Thereafter, Plaintiff filed a motion for reconsideration, insisting that the Court should not have relied on the Contact.  Pl.'s Mem. in Supp. of Mot. for Recons., ECF No. 17.  I rejected this argument and denied the motion, noting that "Plaintiff did not challenge the Contract at the time Defendants moved to dismiss."  Nov. 6, 2014 Mem. Op. & Order 6, ECF No. 29.  Undeterred, Plaintiff still asserts that the Contract "is not the contract between the parties, or any part thereof, and it has nothing to do with the transactions between them."  Pl.'s Opp'n 30.  As I already have determined that this is the Contract, June 25, 2014 Mem. Op. & Order 6, and denied Plaintiff's motion to reconsider that ruling, Nov. 6, 2014 Mem. Op. & Order 6, I will not consider Plaintiff's argument to the contrary now.

The Contract specifically states:

> THE PARTIES AGREE THAT CUSTOMER MAY NOT RECOVER FROM ERS UNDER ANY LEGAL THEORY, AND UNDER NO CIRCUMSTANCES SHALL ERS BE LIABLE TO THE CUSTOMER OR TO ANY THIRD PARTY WITH WHOM CUSTOMER DEALS FOR[] ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR EXEMPLARY DAMAGES, LOSSES, OR EXPENSES . . . NOR SHALL ERS BE LIABLE IN ANY CASE FOR ANY AMOUNT IN EXCESS OF THE PRICE ACTUALLY PAID BY CUSTOMER TO ERS FOR THE PRODUCTS IN QUESTION.

Contract ¶ 10, Defs.' Mot. to Dismiss Ex. 1, ECF No. 6-2.  I will ascribe the ordinary meaning to this unambiguous language.  *See Dynacorp*, 56 A.3d at 670.  Thus, this exculpatory clause provides that Due Forni may not recover any damages, including punitive damages, in fraud, and

in any event, ERS is not liable for more than the price Due Forni actually paid for the ovens.  *See*

Contract ¶ 10.

"In the absence of legislation to the contrary, exculpatory clauses are generally valid, and

the public policy of freedom of contract is best served by enforcing the provisions of the clause."

*Wolf v. Ford*, 644 A.2d 522, 525 (Md. 1994).  Three exceptions to this rule exist:

> First, a party will not be permitted to excuse its liability for intentional harms or
> for the more extreme forms of negligence, i.e., reckless, wanton, or gross.
> Second, the contract cannot be the product of grossly unequal bargaining power.
> . . . Third, public policy will not permit exculpatory agreements in transactions
> affecting the public interest.

*Id.* at 525-26.  Under the first exception, a party cannot contract away its liability for fraud.  *See*

*id.* at 535-36 (first exception not present where "there has been no allegation of fraud or willful

misconduct, and . . . there is no evidence of gross negligence"). The Maryland Court of Appeals

has held that:

> "[A] party to a contract cannot, by misrepresentation of a material fact, induce the
> other party to the contract to enter into it to his damage, and then protect himself
> from the legal effect of such misrepresentation by inserting in the contract a
> clause to the effect that he is not to be held liable for the misrepresentation which
> induced the other party to enter into the contract. The effect of misrepresentation
> and fraud cannot be thus easily avoided. If it could be, the implied covenant of
> good faith and fair dealing existing in every contract would cease to exist."

*Hanley v. Doctors Exp. Franchising, LLC*, No. ELH-12-795, 2013 WL 690521, at *30 (D. Md.

Feb. 25, 2013) (quoting *Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 539 n.7 (Md. 1982)).

Therefore, the exculpatory clause in the Contract before me, providing that Due Forni may not

recover in fraud, an "intentional harm[]," is void as a matter of public policy.  *See Wolf*, 644

A.2d at 525-26, 535-36.

Where a plaintiff establishes liability for fraud, punitive damages may be awarded where

a defendant acts with "actual malice."  *Recycling Sols., Inc. v. Orrs' Envtl., LLC*, No. PWG-14-

1062, 2015 WL 3948981, at *9 (D. Md. June 26, 2015) (citing *Frazier v. Castle Ford, Ltd.*, 59

A.3d 1016, 1026 (Md. 2013)).   The actual malice required to support an award of punitive damages in Maryland cases concerning fraud is defined as "defendant's actual knowledge of falsity, coupled with his intent to deceive the plaintiff by means of the false statement." *Ellerin v. Fairfax Sav., F.S.B.*, 652 A.2d 1117, 1126 (Md. 1995). The question before me now is whether Due Forni presents sufficient evidence that Defendants knowingly misrepresented the origin of the ovens and did so with the intent to deceive Due Forni, so as to preclude summary judgment on the availability of punitive damages.   Based on the evidence before me, I find that Due Forni clearly has met its burden.

As stated previously, the record is clear that Defendants knew that the ovens they were selling Due Forni were not manufactured by Cirigliano. At some point in October of 2010, Defendants were aware that the ovens were manufactured by Morello Forni but marketed under ERS's Cirigliano label. F. Marra Aff. ¶¶ 2-4.   Due Forni has demonstrated there is a genuine dispute of material facts as to whether Defendants continued to represent that the ovens were manufactured by Cirigliano in order deceive Plaintiff into purchasing the ovens and prevent Plaintiff from discovering their true origin. As noted, Morello Forni's co-owner, Marco Morello, stated that, when representatives of ERS purchased four ovens directly from the factory in Italy, they requested that the ovens not display the Morello Forni brand name.   Morello Aff. ¶ 3. Email exchanges between Francesco Marra and Alex Taylor in December, detailing the qualities of the Cirigliano ovens, were made during a period of time when Defendants were requesting a 50% deposit.  Taylor Aff. ¶¶ 21-27.  Further, when issues emerged regarding the performance of the ovens, Defendants represented that they were working to contact Cirigliano on Due Forni's behalf to remedy the issues. *Id.* ¶¶ 31-37. Lastly, Taylor stated that Marra admitted to lying about the true origin of the ovens in order to retain the sale, *id.* ¶ 58, and that Marra made efforts to

hide his deception by scratching off the serial numbers, *id.* ¶ 67.  Consequently, I find that, not only are the terms of the Contract precluding the awarding of punitive damages void as a matter of public policy, but also Plaintiff has presented sufficient evidence of Defendants' intentional misrepresentation regarding the origins of the ovens and the nearly two years' worth of efforts to hide the misrepresentation from Due Forni, so as to preclude summary judgment on this issue. Defendant's request for summary judgment IS DENIED, and punitive damages may be recovered if Plaintiff succeeds in its fraud claims.

### Conclusion

Accordingly, Defendants' motion for summary judgment, ECF No. 37, IS GRANTED IN PART AND DENIED IN PART.  Defendants' motion for summary judgment on the unjust enrichment claim IS GRANTED, and that claim IS DISMISSED.  Defendants' motion for summary judgment precluding punitive damages IS DENIED.  Defendant's motion for summary judgment as to Francisco Marra in his individual capacity IS DENIED.  Lastly, because Due Forni has submitted sufficient evidence to establish the elements of fraud and fraud in the inducement, Defendants' motion for summary judgment as to the claims of fraud and fraud in the inducement IS DENIED, and this case will proceed to trial on those claims.  A call to set a trial date will be scheduled.

Dated: <u>March 29, 2016</u>                              <u>      /S/                </u>
                                                         Paul W. Grimm
                                                         United States District Judge

jac